JB:NMA

**M08-1122**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | **Submitted Under Seal** |
| - against - | AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT |
| SALVATORE MANISCALCO, JR., | |
| Defendant. | (18 U.S.C. § 894(a)) |

- - - - - - - - - - - - - - - X

      BRIAN DRISCOLL, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      Upon information and belief, in or about and between January 1, 2008 and December 1, 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant SALVATORE MANISCALCO, JR. did knowingly and intentionally conspire to use extortionate means to collect extensions of credit.

      (Title 18, United States Code, Section 894(a)(1))

      The source of my information and the grounds for my belief are the following:

### Background

      1.  I have been a Special Agent with the FBI for approximately one year and I am currently assigned to squad C-42, which investigates the illegal activities related to labor

racketeering.  As an FBI agent, I have participated in investigations, including investigations related to loansharking. During the course of these investigations, I have had discussions with other law enforcement agents, and as a result, I have become familiar with organized crime activities, including illegal activities involving extortion, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.  I am familiar with the facts and circumstances of this matter from: (a) my personal participation in this investigation; (b) reports made to me by other law enforcement officials; and (c) information obtained from a cooperating witness.

3.  Except as explicitly set forth below, I have not distinguished herein between facts of which I have personal knowledge and facts as to which I have hearsay knowledge.

4.  Because this affidavit is being submitted for the limited purpose of seeking an arrest warrant and authorization to arrest the defendant SALVATORE MANISCALCO, JR., I have not set forth each and every fact determined during the course of this investigation, but simply those facts which I believe are necessary to establish probable cause for the requested arrest warrant.

## INVESTIGATION

5. I am currently involved in an investigation of SALVATORE MANISCALCO, JR. and others for loansharking, among other crimes. As part of this investigation, I have received information from confidential sources and cooperating witnesses. For example, a cooperating witness ("CW#1) has advised the FBI that MANISCALCO is an associate of La Cosa Nostra.[1] CW#1 stated that MANISCALCO is also known as "Sally Fish." According to CW#1, MANISCALCO has ties to two or more organized crime families and has a reputation for acts of violence, including robberies and extortionate collections of credit, as well as narcotics distribution.

6. The information provided by CW#1, including Maniscalco's affiliation with La Cosa Nostra and his involvement in extortion, is corroborated by court-ordered intercepts of telephone communications of John Giglio, an inducted member of the Genovese organized crime family, as well as other members of La Costra Nostra. A review of these intercepts indicates that as

---

[1] CW#1 is an associate of the Colombo organized crime family. CW#1 has pleaded guilty to federal racketeering charges with predicate acts of Hobbs Act robbery and narcotics trafficking, among other crimes, pursuant to a cooperation agreement in the Eastern District of New York. CW#1 is cooperating in the hope of obtaining leniency in sentencing and potential entry into the Witness Security program. CW#1 has provided law enforcement with information corroborated by additional sources of information and other investigative efforts, including consensual recordings, wiretap intercepts and surveillance.

of April 2006, MANISCALCO frequented illegal gambling locations affiliated with the Genovese organized crime family. In addition, the intercepts demonstrate that MANISCALCO aided Giglio and others in carrying out the affairs of the enterprise. For example, on March 31, 2006, Giglio was intercepted directing another Genovese associate to tell MANISCALCO to assault a loanshark victim. Giglio stated, "Give it, Sally Fish will do it . . . he'll do anything," and further stated in reference to the victim, "I pity that man."

7.  As part of my investigation, I have also listened to court-ordered wiretaps of a cellular phone utilized by the defendant MANISCALCO. Based upon my review of these wiretaps, I believe that MANISCALCO has conspired to use extortionate means to collect extensions of credit from John Doe #1 and John Doe #2.

8.  For example, on November 3, 2008, MANISCALCO was intercepted in a series of discussions about collecting money from John Doe #1, on behalf of his father Salvatore Maniscalco, Sr. MANISCALCO was intercepted calling John Doe #1, who told MANISCALCO that he only gives money to "Sal," a reference to MANISCALCO's father. Immediately after this call, MANISCALCO was intercepted having the following excerpted discussion with John Doe #2:

MANISCALCO: I just called up [John Doe #1] . . . .

John Doe #2: Yeah.

| | |
|---|---|
| MANISCALCO: | He says, he says he don't give money to me. He says, only to Sal. I told him I'm his son, so he wants, he wants you to call him. Where do I go? |
| John Doe #2: | Go to his house, I'm gonna call him now.[2] |

9. Later in the conversation, John Doe #2 was overheard calling the John Doe #1 on another phone, stating, "Yeah . . . . give it to Sal's son. Sal went away. Sal's son is coming to take the money." A little later, MANISCALCO was intercepted explaining the situation to his father, Salvatore Maniscalco, Sr., as follows:

| | |
|---|---|
| MANISCALCO: | Oh, the kid, the guy [John Doe #2]? |
| Sal, Sr.: | Yeah? |
| MANISCALCO: | Me, I gotta see him tomorrow because [John Doe #1] don't wanna meet me, he's, he's paranoid. |
| Sal, Sr.: | He's a fucking idiot, that [John Doe #1]. You can go early in the morning to his house, tell him to leave it with his wife. |
| MANISCALCO: | I gotta go see [John Doe #2] personally cause [John Doe #1] said that he don't want to meet nobody, he's paranoid. So [John Doe #2] says, I'm gonna go meet him. |

10. Subsequently, on November 5, 2008, MANISCALCO was intercepted telling his father, "I seen the guy [John Doe #1] . .

---

[2] All statements are provided in sum and substance and in part. Summaries of recorded conversations are based on draft transcripts of those conversations.

. . I got that, he gave me $325. I got, I took care of that, I got that." Based on my review of these court-ordered wiretaps and others, I believe that MANISCALCO was pressuring John Doe #1 to pay money he owed by invoking his father's name and going to John Doe #1's home. Further, I believe these intercepted telephone calls indicate that MANISCALCO conspired to participate in the use of extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a).

11. On November 22, 2008, MANISCALCO was intercepted having the following discussion with Maniscalco, Sr.:

| | |
|---|---|
| Sal, Sr.: | Don't forget to call this guy, what's his name? |
| MANISCALCO: | Who? |
| Sal, Sr.: | You gotta call him on Sunday. |
| MANISCALCO: | Who? |
| Sal, Sr.: | [John Doe #2] |
| MANISCALCO: | Who's the . . . . this guy [] doesn't answer the phone either. |
| Sal, Sr.: | Yeah, I know. He's a jerk off. I gotta, fuck, when I come back, I'll call him. He's a je-. I know, you know, he's a scumbag. Forget about it, I got all this time, I don't give a fuck. u/i. . . . listen, here's what you do. Make sure you get this guy Ron tomorrow 'cause he, you know, and tell him it's gotta be done 'cause you're sending it out. You gotta send that check out to the insurance, right? |

| | |
|---|---|
| MANISCALCO: | Mmmm. |
| Sal, Sr.: | You gotta get that off him, Right? From [John Doe #2]? |
| MANISCALCO: | How much? |
| Sal, Sr.: | $600 u/i insurance, right? |
| MANISCALCO: | Mmmm. |
| Sal, Sr.: | Tell him that, alright. Eh, tell him you are sending the money out on Monday . . . . |
| | . . . . |
| Sal, Sr.: | Just don't forget that guy [John Doe #2]. |
| MANISCALCO: | Alright. |
| Sal, Sr.: | Stay on top of that guy. |

12. On the following day, November 23, 2008, MANISCALCO was intercepted having the following discussion with John Doe #2:

| | |
|---|---|
| John Doe #2: | What do you want, money, now? |
| MANISCALCO: | Yeah, what happened, you got it? |
| John Doe #2: | No, I need a couple days. Tell him I need two days. |
| MANISCALCO: | Two days ya need? |
| John Doe #2: | Yeah, yeah. Tell him u/i tell him I need a couple days. |
| MANISCALCO: | Alright. What time you want me to call you back? |
| John Doe #2: | No, tell him, he'll be back on Tuesday you think? |

7

| | |
|---|---|
| MANISCALCO: | Yeah, Tuesday or Wednesday, the day before Thanksgiving. |
| John Doe #2: | Wednesday. I'm also a little tight right now. Things are very very very slow. So I need a couple days. |

13. Subsequently, on November 24, 2008, MANISCALCO was intercepted having the following discussion with his father, Salvatore Maniscalco, Sr.:

| | |
|---|---|
| MANISCALCO: | I'd rather talk to you face to face when you get home. |
| Sal, Sr.: | Okay. |
| MANISCALCO: | So we can go over everything. Cause you know, you know what I mean, you're better off, you know certain people you gotta talk to. And then after that I can handle everything after that, after that me and Anthony. |
| Sal, Sr.: | Okay. Me and you are gonna go around to all the places while I'm home. We'll square everything. |
| MANISCALCO: | Yeah, yeah. |
| Sal, Sr.: | Then once I lay it out to them, they'll know exactly what's going on, you're the one whose gonna be talking to them, and that's it, they'll get everything squared away. |

MANISCALCO:        Alright, that's what I'm saying,
                   it'll be a lot easier, this way
                   they'll know.  These other two
                   guys, these other two guys, I don't
                   know, they're just, uh, morons.
                   The guy [] and the guy [John Doe
                   #2]

Sal, Sr.:          Don't worry about [John Doe #2].
                   Tomorrow he's gonna have it to ya.
                   Watch how I call him up and abuse
                   him.  You understand?

14. Based upon my review of these intercepts, I believe MANISCALCO is conspiring to use extortionate means to collect an extension of credit from John Doe #2. For example, when MANISCALCO asked John Doe #2 if he had the money, he was pressuring him to pay money owed to Maniscalco, Sr. This is supported by my review of the later intercept between MANISCALCO and Maniscalco, Sr. When MANISCALCO informed Maniscalco, Sr. that John Doe #2 was a "moron," he was referring to John Doe #2's failure to pay him money. In response, Maniscalco, Sr. informed MANISCALCO that he was going to call John Doe #2 and "abuse him," he was relating his intention to call John Doe #2 and induce him using threats to pay MANISCALCO the money.

## Sealing

15. Based on the confidential nature of the investigation described herein and the potential danger posed to the witness whose information is contained herein, I respectfully ask that this affidavit be filed under seal until further order of the Court.

WHEREFORE, I respectfully request that the Court issue an arrest warrant for the defendant SALVATORE MANISCALCO, JR. so that he may be dealt with according to law.

_____
BRIAN DRISCOLL
Special Agent
Federal Bureau of Investigation

Sworn to before me this
15th day of December 2008

S/ Orenstein
_____
UNITE                    JUDGE
EASTE                    ORK

10